## Elmer Carlton v. The State.

### No. 738.  Decided November 16, 1910.

### Rehearing Denied December 21, 1910.

**1.—Forgery—Indictment—Description of Forged Instrument—Knowledge of Grand Jury.**

Where, in a prosecution for forgery, the indictment alleged that a better description of the note set out therein could not be given, because it was lost, destroyed or in the hands of the accused; and the evidence disclosed that the indictment was 'found without the testimony of the witnesses who were aware of and knew the facts in regard to the execution of the note and its contents, and that the grand jury could have ascertained these facts, a variance between the note so described and that offered in evidence was fatal, and a charge upon this subject should have been submitted.

**2.—Same—Intent to Defraud—Consent.**

Upon trial of forgery, defendant's special instruction submitting want of fraudulent intent was correctly refused, as the evidence did not disclose any fact which could lead defendant to believe that he had a right to sign the name of the party he was alleged to have forged.

Appeal from the District Court of Hamilton.  Tried below before the Hon. J. H. Arnold.

Appeal from a conviction of forgery; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Goodson & Goodson,* for appellant.—On question of forged instrument set out in indictment and want of diligence of grand jury: Atkinson v. State, 19 Texas Crim. App., 462; Jorasco v. State, 6 Texas Crim. App., 238; Williamson v. State, 13 Texas Crim. App., 514; Mendiola v. State, 18 Texas Crim. App., 466; Lopez v. State, 13 S. W. Rep., 219; Ex parte Jones, 10 S. W. Rep., 114; Roberts v. State, 47 S. W. Rep., 358; 5 Rose's Texas, pp. 294-307.

On question of fraudulent intent and consent of party whose name was forged:  McAllister v. State, 59 Texas Crim. Rep., 237, 128 S. W. Rep., 123; Moore v. State, 59 Texas Crim. Rep., 361, 128 S. W. Rep., 1115; Tilmyer v. State, 58 Texas Crim. App., 562, 126 S. W. Rep., 870; Berry v. State, 58 Texas Crim. Rep., 291, 125 S. W. Rep., 580; Tankersley v. State, 51 Texas Crim. Rep., 170, 101 S. W. Rep., 234; McCay v. State, 22 S. W. Rep., 974.

*John A. Mobley,* Assistant Attorney-General, and *J. H. McMillan,* District Attorney, for the State.—When the forged instrument is lost, destroyed or in the possession of the defendant, the substance only need be alleged.  Thomas v. State, 18 Texas Crim. App., 213; Webb v. State, 39 Texas Crim. Rep., 534, 47 S. W. Rep., 356.

When the forged instrument is set out in substance (the disabling facts being alleged) it is sufficient, and being sufficient, a more minute description of the forged instrument is immaterial, and the

grand jury should not be required to use diligence to obtain immaterial matter. Wilson v. State, (Texas Crim.), 72 S. W. Rep., 862; Munson v. State, 79 Ind., 541; 19 Cyc., page 1399; 22 Cyc., page 466, last clause, sec. 11.

On question of variance: Edgerton v. State, 70 S. W. Rep., 90; Baird v. State, 51 Texas Crim. Rep., 322, 101 S. W. Rep., 991.

DAVIDSON, PRESIDING JUDGE.—The charging part of the indictment is as follows: "Elmer Carlton . . . did then and there unlawfully without lawful authority and with intent to injure and defraud wilfully and fraudulently make a false instrument in writing, which instrument can not be set out herein according to its tenor for the reason that it is lost or destroyed or in the possession of the defendant, and which said instrument in writing was then and there in substance as follows:

"$500.00.                          Carlton, Texas, Sept. 24, 1907.

"Thirty days after date without grace for value received we promise to pay to the Perry Baker Hardware Company, or order, at Carlton, Texas, the sum of five hundred dollars, with interest at the rate of ten percent per annum, and ten percent additional on amount of principal and interest unpaid if placed in the hands of an attorney for collection or if suit is brought on same.

Elmer Carlton,
S. L. Carlton,
J. A. Sheets,
S. J. Kerley.

"A better description of said instrument can not be given for the reasons above stated, and the defendant is hereby notified to produce said instrument in writing on the trial of this cause, otherwise secondary evidence of its contents will be introduced by the State, against the peace and dignity of the State."

The note as given was for $504.15, which reads as follows:

"$504.15.                          Carlton, Texas, Sept. 24, 1907.

"Thirty days after date without grace for value received we promise to pay to the order of the Perry Baker Hardware Company at Carlton State Bank, Carlton, Texas, Five Hundred Four and 15/100 Dollars, with interest at the rate of ten percent per annum from maturity until paid, and ten percent additional on amount of principal and interest unpaid for attorney fees if placed in the hands of an attorney for collection or if suit is brought on same.

"This note is secured by pledge of sureties mentioned on the reverse side hereof, and in case of nonpayment when due the holder is hereby authorized to sell the said securities at public or private sale, without recourse or legal proceedings, and to make any transfers that

may be required applying the proceeds of sale towards the payment of this note, and any other indebtedness due said holder."

It is urged here, as it was in the court below, that there is a variance between the note given and that declared upon, first, in the amount, one being $500 and the other being $504.15; second, that the note declared upon was payable at Carlton, Texas, whereas the note executed and shown by the evidence was payable at Carlton State Bank, Carlton, Texas, and, third, the note declared upon did not include the clause set out in the note actually given with reference to its being secured by pledge of sureties. In view of the fact that this case will be reversed upon another ground, we have deemed it unnecessary to discuss the question of variance, as it may not and doubtless will not occur upon another trial.

2. The indictment alleges that a better description of the note could not be given; that it was lost, destroyed or in the hands of appellant. The evidence discloses that the indictment was found without the evidence of the witnesses who were aware of and knew the facts in regard to the execution of the note and its contents. It was executed on one of two forms of notes prepared by and used at the Carlton State Bank. One form of note prepared in blank had printed in form payable to the bank, whereas the other left the name of the payee blank. The note executed by appellant was upon one of the latter class of notes. The payee's name was inserted in this blank. These forms of notes were printed. The grand jury had none of the witnesses, bank officers or parties familiar with these matters before them. These witnesses were introduced upon the trial and said they would have testified had they been called upon. They lived in the county; that no process was served upon them, and further, that they were not before the grand jury. One or two of the grand jurors testified to the fact that they did not send for the witnesses, and found the bill without their presence. So it may be stated that with the slightest diligence the grand jury could have ascertained definitely the exact wording of the note, and that the indictment could have shown the tenor of the note instead of its substance. To bring this matter before the jury appellant asked a special charge, which was refused, to the effect that if they should find from the evidence that the grand jury, from the data, information, knowledge and means that were at hand and subject to their control, and from the process of the court in summoning witnesses they knew and could have ascertained by the use of such diligence as required by law for them to exercise, and could have found, ascertained and charged in the indictment a substantial copy of the note alleged to have been forged, and could have given a full, better and complete description of the same, then the description as given in the bill of indictment will be regarded by the jury as insufficient, and the same will thereby create a variance between the allegations in

the indictment and the evidence offered, and if they should so find appellant should be acquitted. This charge should have been given. If the grand jury, by using such diligence as the law required of them, could have ascertained the status of this note, and its wording and substance, or its tenor either, then the law required that they should do so, and their failure to do so will constitute error upon the trial if a variance is shown. Jorasco v. State, 6 Texas Crim. App., 238; Brewer v. State, 18 Texas Crim. App., 456; Jorasco v. State, 8 Texas Crim. App., 540; Williamson v. State, 13 Texas Crim. App., 514; Atkinson v. State, 19 Texas Crim. App., 462; Boren v. State, 23 Texas Crim. App., 28; Langham v. State, 26 Texas Crim. App., 533; Kimbrough v. State, 28 Texas Crim. App., 367. These cases are sufficient to show the well settled rule in Texas in regard to this question.

That the grand jury could have ascertained these facts is manifest by the testimony of quite a number of witnesses, and the failure to do so is fully sustained by the record. The grand jurors themselves gave evidence to the effect that they did not issue process for any of the witnesses, and did not in fact attempt to secure their attendance. The district attorney also testified that when the bill was found against appellant there were no witnesses before the grand jury in regard to the case; that he was sure there were no witnesses before the grand jury to inquire into a description of the note. That at the time the bill was found Waddill, Kerley and Hartgraves were all well known to him. These were witnesses by whom the form of the note could have been ascertained. It is also admitted in the record that if R. A. Cox, foreman of the grand jury that found the bill, was present, he would testify that there were no witnesses before the grand jury that found this bill. It is also shown by the evidence that these witnesses were easily accessible, living in the county, some of whom were bank officers and would have testified to the contents of the note, and they would have shown that the blank form of notes were only to be filled in by the name of the payee and the amount for which the note was executed, and, of course, the names of those who signed the note as principal and sureties. The witness Finley, for instance, testified that at the time it is alleged that Elmer Carlton forged the name to the note, that he was an officer of the Carlton State Bank. He further states: "I have heard you describe these two kinds of notes and they are the only two kinds of notes that the Carlton State Bank had; that is, one with a blank space left for the customer's name to be written as the payee and the other with the bank's name printed as the payee. Besides that difference the two notes were exactly alike in all respects. The notes were exactly alike except the written part." Under the authorities above cited it is very clear that this judgment must be reversed.

3. Appellant requested special instructions to the effect that if he did not intend to defraud one of the sureties, whose name was

signed to the note, that the jury should acquit. It appears from the record that the name of Kerley was signed to the note without authority as surety. The note was made payable thirty days after date. Kerley was not aware of the fact that his name had been signed to the note until about the expiration of the thirty days, or just after that time. After ascertaining this fact he met appellant and called his attention to the fact, and requested him to straighten the matter up. Appellant stated that he had signed Kerley's name, but thought that it would make no difference with him and that it would be all right. It seems that the parties had been friendly, and that Kerley had known appellant all his life and the relations had been of quite a friendly nature. So there was no question of the fact that appellant did not have authority to sign Kerley's name, and relied upon the fact of their long standing friendship as a reason for signing Kerley's name. Appellant made a remark to the effect that he supposed he would go to the penitentiary, and it is in evidence that he fled the country, and was captured in Arkansas and brought back. Appellant's contention is, under this state of facts, that the jury should have been instructed that if appellant did not intend to defraud Kerley, that the jury should acquit him, and it may be stated, in this connection, that the whole case of forgery seems to rest upon the question of the signature of Kerley and not the others. We are of opinion that this proposition is not sustained by the law. McCay v. State, 32 Texas Crim. Rep., 233, is relied upon to support this contention. Had this case been as the facts in McCay's case, appellant's insistance would have been correct. In that case there had been a course of dealing between the parties which justified McCay in the belief that he had a right to sign the name, but that did not exist in this case, and there was no attempt to show this state of facts. McCay's case, therefore, we think, is not in point.

For the error, however, discussed, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

[Rehearing denied December 21, 1910.—Reporter.]