### THOMAS COLLUM V. STATE.

No. 2269. Decided February 19, 1913.

**1.—Forgery—Indictment—Grand Jury—Description—Variance.**

Where, upon trial of forgery, the grand jury did not describe in the indictment the alleged forged instrument as it was in fact given and as they could have described it by fair and reasonable diligence, the indictment was not sufficient, and there was therefore a variance between the allegation and the instrument forged, and the judgment must be reversed and the cause remanded.

**2.—Same—Rule Stated—Diligence—Indictment.**

Wherever the grand jury could have known by ordinary diligence the true facts, they are not authorized to set out by averment in an indictment an excuse for not setting out the real facts. Following Carlton v. State, 60 Texas Crim. Rep., 584, and other cases.

Appeal from the District Court of Shelby. Tried below before the Hon. W. C. Buford.

Appeal from a conviction of forgery; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*D. M. Short & Sons,* for appellant.—On question of insufficiency of the indictment: Carlton v. State, 60 Texas Crim. Rep., 584, and cases cited in opinion.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—The indictment charges appellant with forgery. The indictment alleges,—that part which it is necessary here to consider,—as follows: "Which said instrument, before being altered as aforesaid, was substantially in words and figures as follows, to wit: Joaquin, Texas. Pay to Thomas Collum, $1.65. Mr. Carlson, the same having been destroyed by the defendant, and which said instrument was so altered by the said Thomas Collum as aforesaid in the manner following, that is to say, the figures of $1.65 was so altered as to read $11.65, as to make the said instrument falsely appear to be

and appear substantially as follows, to wit: Joaquin, Texas, July 15th, 1912. First State Bank of Joaquin, Texas. Pay to Thomas Collum $11.65. ·M. Carlson (a better description of which the grand jury is unable to give, because said check was destroyed by said defendant), against the peace and dignity of the State.'' Only the latter portion of the indictment is quoted above, as only the quoted portion is brought under criticism.

The proposition is asserted for reversal that the grand jury did not describe the instrument as it in fact was given, and as they could have described it by any fair or reasonable diligence; that they had the evidence before them by which they could have determined exactly and verbatim the instrument alleged to have been altered, and that therefore the indictment was not sufficient and therefore there was a variance between the allegation and the instrument forged. Carlson testified that he gave appellant a check on the 15th of July, 1912, for $1.65, and took his receipt for it. McNeill testified that as constable he arrested appellant some time in July on this charge, upon which occasion he saw a part of the check. Here the witness took a blank check and illustrated to the jury the part which he had found in the defendant's possession, by drawing an outline with a pencil of the portion he had in his possession. ''I found on the portion of the check in the defendant's possession the figures '$11.65' and the name 'M. Carlston' written on the line. I also found the word 'leven' written on a portion of the check, which I found in the defendant's possession. There might not have been all of this word ·there, but there was enough so that you could tell it was the word 'eleven.' I also noticed where the cashier had stamped the word 'Paid' across the check. The defendant told me that he had destroyed the other part of the check.'' This witness, being cross-examined, testified as follows: ''The check, a portion of which I found in the possession of the defendant, upon the occasion of his arrest, had printed on it the following, and the words and figures to which I have testified in my direct examination, were inserted in the blanks appearing on the following check, to wit:

'Joaquin, Texas, ........, 191... No. ....

THE FIRST STATE BANK
Of Joaquin, Texas.

Pay to ..........., or bearer, $....... ........ Dollars.

...............,'

I was before the grand jury, which returned this bill of indictment, and was asked some questions about this case.''

Hugh Jones testified he resided at Joaquin, Texas, and was Cashier of the First State Bank there. ''I know the defendant, and about twelve o'clock on July 15, 1912, he presented a check with M. Carlston's signature, for $11.65 for payment. I stamped it paid, but upon fur-

ther examination concluded not to pay it, and passed it back to the defendant, telling him that was a funny way old man Carlston had of spelling eleven, because I discovered that the word eleven was spelled 'Leven.' I also told the defendant that if he wanted the money he would have to get old man Carlston to give him another check; that Carlston might say he did not intend this check to be that much.'' This witness says they separated, defendant going off and witness going to dinner; that subsequently the appellant returned with the check and presented it again, stating that old man Carlson would not give him another check. Witness declined to pay it and appellant left. Witness told him not to come back any more with his check. ''The check which the defendant presented had the figures '11.65' thus, and just like an ordinary bank check and the writing was 'Leven & 65/100.' It was signed by M. Carlston and drawn on the Joaquin State Bank, at Joaquin, Texas. All this occurred at Joaquin, Texas.''

Upon cross-examination this witness testified as follows: ''I saw a portion of this check several days afterwards. It seemed to have been torn into three parts. I am unable to state now exactly whether all of the word 'Leven' was on it, as I did not pay particular attention to it. The figures '65' and the figures '100' and the word 'dollars' were on there and the figure '11' was also on the portion I saw. I had no special occasion for examining this portion, and I never noticed it particularly the last time I saw it; it was in the hands of the justice of the peace, before whom the defendant had his examining trial. I do not know whether the check was made payable to bearer or order. When the defendant presented the check for payment, his name was endorsed on the back of it. The front part of the instrument, as well as the endorsement, was written with an ordinary black pencil. The word 'Leven' was written in the space in which some word seemed to have been first written and erased.'' It was admitted in the record that the other portions of the torn check were not found. Carlson testified to his want of consent in changing the check from $1.65 to $11.65. Carlson was also before the grand jury and was questioned about the transaction. He says: ''The check shown me and introduced in evidence, and found in this statement of facts, had the same writing and figures on it, so far as form is concerned, as the one which I gave the defendant. I merely filled in the blanks and inserted the date and signed my name. In other words, the following is substantially a copy of the check I gave the defendant.

'Joaquin, Texas, July 15, 1912. No. 441.

THE FIRST STATE BANK
Of Joaquin, Texas.

Pay to Thom Collum or Bearer $1.65

One 65/100 ................ Dollars.

M. Carlston.'

"On ·re-direct examination and on re-cross examination this witness stated that there was no substantial difference as to the words and figures between the check in the record and that given the defendant by him, though there might have been some difference as to the size of the paper."

Sanders testified that the torn parts of the check were lost; that he was county attorney and that he could not find them. It was also stated by this witness that the witnesses Carlson, Jones and McNeill were, in July, 1912, and are now, resident citizens of Shelby County. So it will be seen that the check was written upon the blank form mentioned by the witness McNeill, and it is also shown that McNeill was before the grand jury, as was the cashier of said State Bank of Joaquin, and if the grand jury had desired they could have, by the slightest diligence, found out exactly the character of check, the blanks of which were filled in by Carlson when he signed the check for $1.65. The blank form, he says, was the same as given here, which was, pay to ........, or bearer, ........ dollars. This check was filled out, making it read:

"Pay to Thom Collum, or bearer, $1.65.

One 65/100 ............... Dollars."

M. Carlston.

Whereas, the check set out in the indictment was made to read:

"Pay to Thomas Collum, $1.65, (in figures) M. Carlson."

By observing the two instruments they are not the same so far as the reading of the face of them is concerned, and the facts show, beyond any question, that the grand jury had the witnesses before them by whom they could have reproduced it exactly,—that is, by its tenor. Appellant brought this matter to the attention of the court in various ways. By charges, exceptions to charges, attack on the sufficiency of the evidence in the way of variance. In fact, counsel urged all possible objections from legal standpoints. This case falls squarely within the rule laid down in Carlton v. State, 60 Texas Crim. Rep., 584, and it follows the unbroken line of authorities therein cited. Appellant has collated quite a number of cases, among others, Jorasco v. State, 6 Texas Crim. App., 238; Jorasco v. State, 8 Texas Crim. App., 541; Brewer v. State, 18 Texas Crim. App., 456; Williamson v. State, 13 Texas Crim. App., 514; Atkinson v. State, 19 Texas Crim. App., 462; Webb v. State, 39 Texas Crim. Rep., 534; Pierce v. State, 38 Texas Crim. Rep., 604; Greenl. on Evid., sec. 32; Bish. Cr. Proc. (2 ed.), 549-552; Whart. Am. Crim. Law, sec. 251; Branch's Crim. Law, sec. 383, for collated cases.

It has been by unbroken line of authorities the settled law in Texas that wherever the grand jury could have known by ordinary diligence the true facts they are not authorized to set out by averment in an

indictment an excuse for not setting out the real facts. The form used by Carlson, to wit: the form used by the First State Bank at Joaquin and the cashier of that bank could have been had before the grand jury. The cashier lived in Shelby County at the time. Carlson, who wrote the check on the First State Bank form was in the county, and before the grand jury. McNeill, who testified to the form, was also before the grand jury; and there is no excuse why the form of check used and alleged to have been forged could not have been reproduced before the grand jury, and set out in the indictment. This very question was decided in the Carlton case, supra. The excuse given by the grand jury was the instrument had been destroyed. We refer again to Carlton's case, supra. The grand jury could have had the cashier of the bank before them; Carlson, who drew the check, and McNeill, who reproduced the form of the check, were residents of that county and could have testified before that body as they did before the jury.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*